UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

TERRENCE L. BATTISTE and BRYAN C. BERRY,

        Plaintiffs,

    v.                                      08-cv-1379

THE UNITED STATES DEPARTMENT OF JUSTICE,

        Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

THOMAS J. McAVOY
Senior United States District Judge

## DECISION and ORDER

        Plaintiff Terrence Battiste commenced the instant action pursuant to section 706 of the Administrative Procedure Act ("APA") challenging the decision of the United States Attorney's Office (USAO) not to produce documents or make Department of Justice employees available to testify in response to a subpoena issued in connection with a state criminal proceeding.  Presently before the Court are the parties' cross-motions for summary judgment pursuant to Fed. R. Civ. P. 56.

**I.**      **FACTS**

        **a.**        **Underlying Criminal Case**

        In March1998, Plaintiff Terrence Battiste was sentenced to 41 months in federal prison for possession with the intent to distribute cocaine.  Approximately three and one-half years later, while on supervised release, Plaintiff was stopped by the Troy Police Department ("TPD") for a traffic violation.  On November 9, 2001, Plaintiff advised his probation officer of

the charges and that he had unpaid traffic fines.  Plaintiff indicated that he could not obtain

his driver's license until he paid some of those fines.

On July thereafter, Plaintiff encountered his wife's cousin, Wesley Reed.  Reed

advised Plaintiff that a marijuana dealer owed him money.  Reed offered Plaintiff $300 to

accompany Reed to assist in retrieving the money.  Plaintiff agreed.  Reed sent Bryan Berry,

Alyson Boyd and Plaintiff to to recover the money.  The three men entered the dealer's

apartment and took several pounds of marijuana.

On January 26, 2002, Tramaine Hill, the half-brother of Samuel Holly, reported to

the TPD that he found the bodies of Holley and Holley's girlfriend, Arica Schneider, in their

apartment in Troy, New York.

On March 10, 2005, Plaintiff was arrested by the TPD.  Plaintiff contends that the

arrest was the result of a warrant issued by Magistrate Judge David Homer and an

interrogation earlier that day that may have involved federal law enforcement officers.  During

an interrogation after his arrest, Plaintiff admitted to the robbery of the marijuana dealer.

Plaintiff denied any involvement in the murders of Holley and Schneider.

In a complaint dated March 10, 2005, Plaintiff was charged with violating the Hobbs

Act.  The complaint was supported by the affidavit of Special Agent Susan Aiken, who stated

that she obtained information from a reliable confidential informant that Plaintiff was a

member of a criminal gang who, from the summer of 2001 through the winter of 2001-2002,

planned and committed a series of robberies of drug dealers in the Albany/Troy areas.

The federal complaint was prosecuted by Assistant United States Attorney William

Pericak ("AUSA Pericak").  AUSA Pericak admitted that the primary aim of the investigation

was to solve the double murder.  According to AUSA Pericak, "the way we set about trying to

do that was we looked at people who he had information had committed robberies of drug

dealers in Troy, because the double homicide involved a drug dealer. . . ."

      The United States entered into a cooperation agreement with Plaintiff.  It is alleged

that AUSA Pericak was negotiating a plea agreement with Plaintiff in exchange for his

cooperation in the investigation of the murders.  Ultimately, Plaintiff entered a guilty plea to

possessing with the intent to distribute less than 50 kilograms of marijuana in violation of 21

U.S.C. § 841(b)(1)(D).  The factual basis for the plea was the robbery of the marijuana

dealer.  In August 2006, Plaintiff was sentenced to 79 months incarceration.  Plaintiff was

incarcerated when, in July 2007, he was indicted by the State of New York for the murders of

Holley and Schneider.

      Plaintiff's defense counsel was informed by then Rensselaer County Deputy District

Attorney Dan Hanlon that there were three "phases" to the case against Plaintiff: (1)

admissions made by Plaintiff to jailhouse informants; (2) non-jailhouse informant information;

and (3) eyewitness testimony placing Plaintiff as one of the persons outside the crime scene.

      In the New York State criminal case against Plaintiff, the judge granted the request

for: (1) a hearing pursuant to <u>People v. Singer</u>, 44 N.Y.2d 241, (1978), inquiring into the delay

between the commission of the homicides and the indictment;[1] (2) a hearing pursuant to

<u>People v. Huntley</u>, 15 N.Y.2d 72 (1965), regarding the admissibility of statements allegedly

given by Plaintiff to the police; and (3) an audibility hearing concerning certain audio and

---

[1] In <u>Singer</u>, the New York Court of Appeals held that unreasonable delay in prosecuting a
defendant constitutes a denial of due process of law and that "if commencement of the action has been
delayed for a lengthy period, without good cause, the defendant may be entitled to a dismissal although
there may be no showing of special prejudice."  44 N.Y.2d at 254.

videotapes.  The court also ordered a hearing to determine whether the jailhouse informants were acting as agents of the state.

> **b.**      **Procedural History of the Instant Proceedings**

On July 22, 2008, Plaintiffs served subpoenas seeking documents and testimony from: (1) the United States Probation Office for the Northern District of New York; (2) AUSA Pericak; and (3) AUSA Daniel Hanlon.  The subpoenas were served in connection with a criminal proceeding (murder) against Plaintiff in the State of New York.

By letter dated July 24, 2008, the USAO advised Plaintiff that it could not seek authorization to comply with the subpoenas absent compliance with the applicable regulations found at 28 C.F.R. § 16.21 - 16.29.  Accordingly, Plaintiff submitted an application under the applicable regulations.  Acting United States Attorney Andrew Baxter reviewed Plaintiff's application and determined that the information sought was not subject to release under applicable Department of Justice regulations.  Baxter concluded that:

> The subpoenas demand investigatory records complied for law enforcement purposes.  The disclosure of such records could interfere with law enforcement proceedings by, *e.g.* prematurely disclosing the identity of witnesses to conduct of Battiste and Berry that was not within the ambit of the federal charges pursued, or by revealing the investigative techniques pursued, thereby impairing their future effectiveness. . . .
>
> Some of this investigatory information . . . would come under one of the categories set forth in 28 C.F.R. § 16.26(b), and [requires] . . . review from either the Deputy Attorney General or the Associate Attorney General. . . .
>
> Some of the information demanded (*e.g.* grand jury transcripts) would not be appropriate for disclosure . . . under 28 C.F.R. § 16.26(b)(1) and Fed. R. Crim. P. 6(e). . . . [A] United States Attorney is not authorized to disclose such information . . . without review from either the Deputy Attorney General or the Associate Attorney General. . . .
>
> [Plaintiff] received some of those same materials as discovery in connection with [his] federal prosecution. . . .

- 4 -

> [T]he witness statements, grand jury transcripts, witness credibility information, and documentary evidence relevant to both the federal and state investigations . . . that were in the custody and control of the U.S. Attorney's Office . . . and the Federal Bureau of Investigation, have been provided by the [U.S. Attorney's Office] to the Rensselaer Coutny District Attorney's Office. I determined that . . . such information was more appropriately disclosed through the DA, pursuant to the rules of procedure applicable to the state prosecution, rather than pursuant to a state subpoena directed to officials of the Department of Justice. . . .

> [I]nformation pertaining to the deliberative process of the FBI and of the USAO in the investigation and conduct of a federal criminal action would not be subject to disclosure . . . because it would fall under the attorney work product and/or deliberative process government privileges. Any possibly exculpatory information obtained as part of the federal investigation has been disclosed to [Plaintiff] . . . in connection with the federal investigation, or turned over to the DA so as to become discoverable under the procedural rules and law applicable in the state prosecution. However, the decision of the USAO and the FBI about which charges should be pursued in the federal prosecution would be protected by the work product and government privileges. . . .

Accordingly, the Acting United States Attorney for the Northern District of New York did not authorize his office to respond to the subpoena.

The USAO moved to quash the subpoenas in state court. Upon learning that the state court intended to hold a hearing on the motion, the USAO removed the matter to this Court. Ultimately, the United States withdrew its objection as to the subpoena issued to AUSA Hanlon (who was not an employee of the federal government during the times encompassed by the subpoena). In September 2008, new subpoenas were served on AUSA Pericak and Federal Bureau of Investigation Special Agent Charles Kessler ("SA Kessler"). On December 5, 2008, the United States moved to quash the subpoenas issued to AUSA Pericak and SA Kessler. This Court dismissed the removal action.

Plaintiff commenced the instant action under the APA seeking issuance of a writ of mandamus compelling the United States Probation Office, AUSA Pericak and SA Kessler to comply with the subpoenas.

## II.   DISCUSSION

Plaintiffs seek review of the Department of Justice's determination not to comply with the subpoenas served on AUSA Pericak and SA Kessler.

"[A] court cannot enforce a subpoena against an employee of the federal governmental agency when the agency has validly enacted a regulation. . . that withdraws from employees the power to produce documents." Houston Business Journal, Inc. v. Office of Comptroller of Currency, U.S. Dep't of Treasury, 86 F.3d 1208, 1212 (D.C. Cir. 1996) (citing United States ex rel. Touhy v. Ragen, 340 U.S. 462, 467-69 (1951). The Department of Justice has such regulations.

Department of Justice regulations provide that:

(a) In any federal or state case or matter in which the United States is not a party, no employee or former employee of the Department of Justice shall, in response to a demand, produce any material contained in the files of the Department, or disclose any information relating to or based upon material contained in the files of the Department, or disclose any information or produce any material acquired as part of the performance of that person's official duties or because of that person's official status without prior approval of the proper Department official in accordance with §§ 16.24 and 16.25 of this part.

The factors to be considered in determining whether to disclose information pursuant to a subpoena are set forth in 28 C.F.R. § 16.26. That section provides, in pertinent part, as follows:

(a) In deciding whether to make disclosures pursuant to a demand, Department officials and attorneys should consider:

(1) Whether such disclosure is appropriate under the rules of procedure governing the case or matter in which the demand arose, and

(2) Whether disclosure is appropriate under the relevant substantive law concerning privilege.

(b) Among the demands in response to which disclosure will not be made by any Department official are those demands with respect to which any of the following factors exist:

(1) Disclosure would violate a statute, such as the income tax laws, 26 U.S.C. 6103 and 7213, or a rule of procedure, such as the grand jury secrecy rule, F.R.Cr.P., Rule 6(e),

(2) Disclosure would violate a specific regulation;

(3) Disclosure would reveal classified information, unless appropriately declassified by the originating agency,

(4) Disclosure would reveal a confidential source or informant, unless the investigative agency and the source or informant have no objection,

(5) Disclosure would reveal investigatory records compiled for law enforcement purposes, and would interfere with enforcement proceedings or disclose investigative techniques and procedures the effectiveness of which would thereby be impaired,

(6) Disclosure would improperly reveal trade secrets without the owner's consent.

(c) In all cases not involving considerations specified in paragraphs (b)(1) through (b)(6) of this section, the Deputy or Associate Attorney General will authorize disclosure unless, in that person's judgment, after considering paragraph (a) of this section, disclosure is unwarranted. The Deputy or Associate Attorney General will not approve disclosure if the circumstances specified in paragraphs (b)(1) through (b)(3) of this section exist. The Deputy or Associate Attorney General will not approve disclosure if any of the conditions in paragraphs (b)(4) through (b)(6) of this section exist, unless the Deputy or Associate Attorney General determines that the administration of justice requires disclosure. In this regard, if disclosure is necessary to pursue a civil or criminal prosecution or affirmative relief, such as an injunction, consideration shall be given to:

(1) The seriousness of the violation or crime involved,

(2) The past history or criminal record of the violator or accused,

(3) The importance of the relief sought,

(4) The importance of the legal issues presented,

(5) Other matters brought to the attention of the Deputy or Associate Attorney General.

- 7 -

Where an agency has applicable regulations, "a state-court litigant must request the documents from the federal agency pursuant to the agency's regulations. . . ." Houston Business Journal, Inc., 86 F.3d at 1212.  Here, Plaintiffs did so by submitting a "Touhy" affidavit.  See Compl. at Ex. 1.  The USAO denied the request.

Where an agency refuses to produce the requested documents or to make an employee available to provide testimony, "the sole remedy for the state-court litigant is to file a collateral action in federal court under the APA."  Houston Business Journal, Inc., 86 F.3d at 1212; see also also Commonwealth of Puerto Rico v. United States, 490 F.3d 50, 61 n.6 (1st Cir. 2007)  Edwards v. United States Dep't of Justice, 43 F.3d 312, 315 (7th Cir. 1994); Exxon Shipping Co. v. United States Dep't of Interior, 34 F.3d 774, 778 (9th Cir. 1994); Boron Oil Co. v. Downie, 873 F.2d 67, 70 (4th Cir. 1989).

Review under the APA of an agency's determination not to respond to a subpoena is governed by the arbitrary and capricious standard.  See 5 U.S.C. § 706(2)(A);  Watts v. S.E.C., 482 F.3d 501, 509 n.* (D.C. Cir. 2007); Commonwealth of Puerto Rico v. United States, 490 F.3d 50, 60-61 (1st Cir. 2007) ("Under the APA, we will overturn the [agency's] decision not to release the requested information only if it was 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.") (citing 5 U.S.C. § 706(2)(A)); Edwards, 43 F.3d at 314.  In applying the arbitrary and capricious standard, the Court is deferential to the agency's decision.  Commonwealth of Puerto Rico, 490 F.3d at 61; Envtl. Def. v. E.P.A., 369 F.3d 193, 201 (2d Cir. 2004).  The Court "may not assess the wisdom of an agency's choice; inquiry is limited instead to whether the [agency] has made a clear error of judgment."  Falk v. Sec'y of the Army, 870 F.2d 941, 945 (2d Cir. 1989).  The focus is on "the administrative record already in existence, not some new record made initially in the

reviewing court." <u>Camp v. Pitts</u>, 411 U.S. 138, 142 (1973) (per curiam).  The burden of persuasion is on the party challenging the agency's decision.  <u>Miller v. Mehltretter</u>, 478 F. Supp.2d 415, 420  (W.D.N.Y. 2007).

Plaintiff has not specifically addressed why he believes the USAO's decision not to comply with the subpoenas was arbitrary and/or capricious.  Rather, Plaintiff reasserts his position that compliance with the subpoenas is necessary to his defense.  Plaintiff contends that he issued a subpoena to SA Kessler concerning information he may have regarding any pre-Indictment delay (*i.e.* when the law enforcement began investigating Plaintiff), whether certain informants were agents of the State of New York (which may implicate a violation of his right to counsel), whether statements given to these informants by Plaintiffs were in violation of their right to counsel, and whether statements given by Plaintiffs to the police are admissible.  Plaintiff asserts that SA Kessler was involved in a joint investigation with the TPD and, therefore, has pertinent information on these issue favorable to the defense. Plaintiff also contends that SA Kessler can favorably testify concerning Plaintiff's willingness to cooperate with the murder investigation and the favorable result of a check on the registration of certain vehicles.  Lastly, Plaintiff contends that SA Kessler's testimony is necessary to demonstrate efforts by the police to avoid attachment of the right to counsel with respect to Marcel Bullock and Dolphus Pryor.

Plaintiff issued a subpoena to AUSA Pericak concerning pre-Indictment delay. Plaintiff contends he also needs evidence from AUSA Pericak concerning any consideration given to cooperating witnesses and any <u>Brady</u> information he may have, including any reasons why he may have declined to prosecute the homicides or why he agreed to a "lesser" plea agreement.

Upon review of the submissions, the Court finds that, for the following reasons, the decision not to authorize disclosure of the requested information is neither arbitrary nor capricious and that Plaintiff is not otherwise entitled to the requested information from the Department of Justice or the Probation Office.

First, the Court agrees with the USAO that much of the foundation supporting the requested information is speculative.  For example, Plaintiff claims that, because the FBI delayed entry of information concerning Pryor and Bullock, he "needs to examine Special Agent Kessler as to whether anything of a similar nature occurred with Mr. Battiste."  Absent any indication that Plaintiff was treated similarly (of which there is none), any examination of Agent Kessler in this regard would be a fishing expedition.  Similarly, the reasons Plaintiff attributes to AUSA Pericak for declining to pursue certain charges or a certain sentence[2] is based upon conjecture.  Lastly, Plaintiff's belief that the jailhouse informants were given some type of benefit or consideration by the government is unsubstantiated and not based on any record evidence.[3]  See n.4. *infra*.

Second, Plaintiff has failed to demonstrate that his need for the documents or testimony outweighs the need to prevent disclosure of law enforcement techniques and procedures, to preserve the confidentiality of sources, to protect witness and law

---

[2] Plaintiff seems to believe that AUSA came upon some evidence that would exculpate him from the murders.

[3] Having reviewed Plaintiff's submissions, the Court cannot identify any evidence (beyond Plaintiff's speculation) indicating that the jailhouse informants were provided any benefit or consideration in exchange for their information and/or testimony.  Plaintiff's claimed evidence that the Government "has attempted to seal evidence of cooperation given by the child prosecution witness . . . Wesley Reed" is: (1) based on surmise concerning the reasons why proceedings concerning Reed's supervised release violation were sealed; and (2) irrelevant to any consideration or benefit provided to Lester Crandall and/or Lee Tisdale, the jailhouse informants.

enforcement personnel, to safeguard the privacy of individuals involved in an investigation,

and otherwise to prevent interference with an investigation.

> Th[e] [law enforcement] privilege is designed "to prevent disclosure of law
> enforcement techniques and procedures, to preserve the confidentiality of sources,
> to protect witness and law enforcement personnel, to safeguard the privacy of
> individuals involved in an investigation, and otherwise to prevent interference with
> an investigation." In re Dep't of Investigation of City of New York v. Myerson, 856
> F.2d 481, 484 (2d Cir.1988). It bars disclosure of facts, and is "based primarily on
> the harm to law enforcement efforts which might arise from public disclosure of . . .
> investigatory files." See Black v. Sheraton Corp. of America, 564 F.2d 531, 541
> (D.C.Cir. 1977); see also U.S. v. Winner, 641 F.2d 825, 831 (10th Cir. 1981).
>
> The privilege is qualified, however, and "there is a need to balance the public
> interest in nondisclosure against the need of the particular litigant for access to the
> privileged information." Friedman v. Bache Halsey Stuart Shields, Inc., 738 F.2d
> 1336, 1341 (D.C. Cir. 1984); see also Borchers v. Commercial Union Assur. Co.,
> 874 F. Supp. 78, 79-80 (S.D.N.Y.1995); U.S. v. Davis, 131 F.R.D. 391, 395
> (S.D.N.Y. 1990).
>
> When the information sought is "both relevant and essential" to the presentation of
> the case on the merits and "the need for disclosure outweighs the need for
> secrecy," the privilege is overcome. In re Search of Premises Known as 1182
> Nassau Averill Park Rd., 203 F.Supp.2d 139, 140 (N.D.N.Y. 2002). "Whether the
> showing of relevance and need rises to the requisite level is a discretionary
> determination that must necessarily be made on a case-by-case basis." Kitevski v.
> City of New York, No. 04 Civ. 7402, 2006 WL 680527, *3 (S.D.N.Y. Mar. 16, 2006).

Miller v. Mehltretter, 478 F. Supp.2d 415, 424 (W.D.N.Y. 2007).

The Court recognizes that, in light of the serious charges against Plaintiff, he has a

substantial interest in obtaining information necessary for his defense. The Court also

recognizes that there may not be a legitimate basis for asserting this privilege in light of the

fact that the USAO has provided substantial information, including confidential information

(*e.g.* the identity of its confidential informants), to Defendant. To the extent that the

government does have information subject to this privilege, Plaintiff has failed to demonstrate

that the information sought is essential to his defense or not otherwise available through

other means.  Plaintiff already has substantial evidence of the FBI's involvement in the

investigation into the murders dating back to at least April 2002, only a few months after the

murders in January 2002.  This evidence includes a transcript of SA Kessler's testimony in

prior federal proceedings and law enforcement reports detailing the investigation, including

the FBI's involvement.  Plaintiff also has received significant other disclosures from the

USAO.  To the extent Plaintiff seeks information concerning consideration or benefits paid to

the jailhouse informants, or evidence that the informants were working on behalf of law

enforcement, any such information can be obtained through other means, such as from the

informants themselves or through disclosure from the District Attorney's office.[4]

Third, the USAO correctly concluded that the deliberative process of the FBI and

the USAO is privileged.

> The deliberative process privilege shields information "reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated."  Carl Zeiss Stiftung v. V.E.B. Carl Zeiss, Jena, 40 F.R.D. 318, 324 (D.D.C. 1966), aff'd memo. sub nom, V.E.B. Carl Zeiss, Jena v. Clark, 384 F.2d 979 (1967); see also Winner, 641 F.2d at 831. "[T]he so-called 'mental process rule' impresses the stamp of secrecy ... to all phases of the decision-making process, of which the advice is a part.... [It] operate[s] to preserve the integrity of the deliberative process itself. It is evident that to demand pre-decisional data is at once to probe and imperil that process." Id. at 326. The privilege applies to "confidential deliberations of law or policymaking, reflecting opinions, recommendations or advice." In re Grand Jury, 821 F.2d 946, 959 (3d Cir. 1987).

Miller, 478 F. Supp.2d at 429-30.  "Evidence regarding the basis or strategy of prosecutorial

decisions or investigations is rarely subject to disclosure."  Id. at 430.

---

[4] Indeed, it would appear that if these informants were called to testify at trial, the prosecution would be obligated to provide information concerning any consideration given to them.

Any information concerning the decision to pursue, or forego, certain charges against Plaintiff falls well within the deliberative privilege and Plaintiff has not identified sufficient reasons warranting disclosure of such information.  Plaintiff has available to him his cooperation agreement with the government, the details of any plea negotiations with the USAO, his final plea agreement, and the discovery disclosures made by the USAO.  With this information, Plaintiff is free to make arguments concerning the reasons why AUSA Pericak declined to pursue certain charges or declined to pursue a particular sentence, why there was a delay in bringing charges against him, etc.  Similarly, as discussed, Plaintiff already has available to him information concerning when the federal government became involved in the investigation of the homicides and the nature of its investigation and there is no reason to believe (aside from Plaintiff's speculation) that AUSA Pericak has any exculpatory information beyond that which has already been disclosed to Plaintiff or has been given to the DA for disclosure through the New York State Criminal Procedure Law.

Fourth and, perhaps, most significant, is that the government has represented that "the witness statements, grand jury transcripts, witness credibility information, and documentary evidence relevant to both the federal and state investigations . . . that were in the custody and control of the U.S. Attorney's Office . . . and the [FBI], have been provided by the USAO to the Rensselaer County District Attorney's Office."  Thus, the requested information is available to Plaintiff through the state criminal law procedure.  The state court can ascertain what information, if any, is required to be disclosed to Plaintiff.  Similarly, Plaintiff concedes that he already has received substantial information from the government, including "full disclosure of the identity of confidential sources and informants."  Pl. Mem. of

Law at 6.  Plaintiff, therefore, has other means available to him to obtain the requested information (if he does not already have it).

In conclusion, Plaintiff has failed to satisfy his burden of demonstrating that the Department of Justice acted arbitrarily or capriciously in declining to provide information or testimony pursuant to the subpoenas.  Plaintiff does not demonstrate why the testimony of AUSA Pericak or SA Kessler is needed above and beyond the documentary evidence already in his possession or otherwise available to him.

With respect to the subpoena issued to the Probation Office, Plaintiff has failed to identify any agency action or agency regulations subject to the APA.  Regardless, for the reasons previously stated, Plaintiff has failed to articulate a compelling need for disclosure that meets the ends of justice.  United States v. Charmer Indus., Inc., 711 F.2d 1164, 1171-76 (2d Cir. 1983).  This is particularly so where, as here, much of Plaintiff's asserted bases for the information is speculative and he is already in possession of, or has available to him through the state criminal procedure or other means, most of the information that he seeks.

**III.     CONCLUSION**

For the foregoing reasons, Defendant's motion for summary judgment (Dkt. No. 18) is GRANTED, Plaintiffs' cross-motion for summary judgment (Dkt. No. 20) is DENIED, Defendant's motion to strike (Dkt. No. 21) is DENIED, and the Complaint is DISMISSED in its entirety.  The Clerk of the Court shall close the file in this matter.

IT IS SO ORDERED.

Dated:   September 23, 2009

Thomas J. McAvoy
Senior, U.S. District Judge